21-2101 Mr. Hayes. Good morning, Your Honor. Good morning. Tracy Hayes on behalf of the appellant. You can lift those up, and because of the masks, you can try to speak right into the mic, if you would. Thank you. Jody Ann Stephenson. As the Court indicated, this is a motions hearing. Ms. Stephenson filed a motion in the District Court to allow her to remain on bond pending appeal. That was denied, and we filed a similar motion for this Court. Let me ask you a quick question about that motion. I saw on the docket an affidavit in support of Ms. Stephenson's emergency motion to stay sentence pending appeal. And the affidavit referred to the substantial questions of law that are raised as detailed in the attached memorandum. I did not see a memorandum. And the Court is correct. That is my fault in terms of the filing. To be frank with the Court, I file my District Court papers. I don't file my Second Circuit papers. I did see this, but after it was drafted and reviewed, I asked my paralegal to file it. You mean so there was one prepared, but it was never filed? No. No, there was not. There was none. There was just this sort of brief affidavit, if you will. Okay. Well, then, if you would, it does refer to the substantial questions of law that are raised by the appeal and that are likely to result in reversal or order for a new trial. What are those substantial questions of law? Thank you, Your Honor. It is outlined. In particular, it's given my client's family circumstances that are extraordinary. Well, that has to do with kind of sentencing and how whether there should be a delay under the guidelines and so on. But on her actual appeal, I mean, unless I'm misunderstanding, I think we have to, under Section 3143, in terms of I thought there was a pending appeal of her conviction as well that you were saying raises substantial questions. Or are you not saying that? You're just saying that the sentencing raises substantial questions based on the sentencing guidelines. That's correct. That is correct. Okay. We have a briefing date for the appellant. That's January 9th. So we have not submitted our opening brief for the actual appeal itself. So we're just asking for – But what you're saying, I think, is that the sentence imposed was substantively unreasonable? That's correct. Okay. Thank you. And that's based on, again, the extraordinary family circumstances. Ms. Stevenson is a mother of three children. The oldest one is not yet 4 years old, and the youngest one was born earlier this year in February. So three children, which she cares for. She also has medical and behavioral health issues herself that she is being treated for by various doctors. But the district court knew all this. You're saying that no court could have considered these facts and imposed a custodial sentence. Yes. I'm also saying – so it was unclear at sentencing if the court – there were extraordinary circumstances, family circumstances at sentencing. And even given that, the court imposed a sentence of 6 months of time. Well, the court explained that it was considering her family circumstances, which are indeed dire. Nonetheless, given the gravity of the offense and how long it went on and the amount of money she made from it and so on, that he thought on balance, considering all the factors, that some kind of incarceratory sentence needed to be imposed. And this was substantially less than would have been authorized or was in the guidelines. Your Honor, that was unclear at sentencing at that time. It seemed at sentencing the court indicated, and I'm quoting, I also agree with Mr. Hayes in part that your family circumstances warrant further consideration, and you're going to receive that consideration today. And so it seemed as though the court had found that there were extraordinary family circumstances under 5H1.6. And I'm reading from page 2 of my brief, Your Honor, in quoting the court. But, yes, the court said that he was going to give consideration, and he did consider it, but then he spelled out his reasoning in some detail. They warrant further consideration. You're going to receive that consideration today. Certainly difficult for the court to think about taking a mother away from her children, her small children. But I don't think I'd be doing my job if I didn't impose some prison time. The offense is too serious. The extent of the conduct, the fact you profited from it. And if someone like you doesn't receive a prison sentence, then really it's difficult to say that the laws have much teeth. Why isn't that exactly the kind of balancing that a district court is called on to do? I think balancing is somewhat different when you are considering 5H1.6, Section 5H1.6. I believe there, when you find these circumstances, what the court has to review is, of course, the seriousness of the offense, Your Honor. Also, the defendant, if the defendant had any, or the family members had any interaction with the defendant in terms of the offense, and or if the defendant is a danger to the family. So you have to consider those under 5H1.6. Based on what the court indicated at sentencing, it seemed as though they reached that, the court reached the decision of extraordinary family circumstances. When you reach that decision, you need not go any further. You have to, at that point, find a way to not impose any prison time. Your view is that a finding of extraordinary family circumstances, as a variance, by the way, not as a matter of a departure under the guidelines, compels a noncustodial sentence. It doesn't matter about deterrence. It doesn't matter about seriousness of the offense. It doesn't matter about any of those other 3553A factors. Well, yes. Do you have any law to support that? Your Honor, I'm reviewing, one, what would be the sentencing guidelines, the actual section itself, and also But your view is that the sentencing guidelines suggest that a family circumstances departure, which the judge didn't find here, requires a noncustodial sentence? Well, not just family circumstances, Your Honor. Extraordinary family circumstances, where as Well, it allows for, it's a basis for a departure. But it doesn't say that you have to depart all the way down to that part of the guidelines table that is noncustodial, does it? Well, Your Honor, perhaps the, if the court may believe that I am misreading. But I think here it was confusing at sentencing in terms of the district court's finding. I understand that the district court made a departure, if you will, or made actually a variance. But that wasn't until we actually read the judgment. So I have to rely on the judgment to understand what was, what happened at sentencing. Could I ask a factual question? I gather that your client's husband was going to be sentenced as well by the district court. And I did not see in the record if that happened and what sentence he received. It did not happen. He did not plead guilty until a week or so after our sentencing. So that's when he entered. So is he now incarcerated, or is he not? No, he's awaiting sentencing. He's awaiting sentencing. That's correct, Your Honor. And when is that supposed to happen? Typically, I don't know the specific date. I just know that it's typically three months from sentencing. And I understood that there were grandparents involved. I think the district court mentioned that there were grandparents, and I was confused by the transcript about how close they lived or what have you. So actually, the grandparents that Mrs. Stevenson did rely on are no longer in the picture. So that was their paternal grandparents, the children's paternal grandparents. They have relocated to Jamaica. I see. So, again, and it's not just the expert. Excuse me, does that relocation take place after the sentence? That's correct. So that's not in the record before us? No. At sentencing, Your Honor, there was so much happening for Mrs. Stevenson around that time. She was relocating her residence partly because of her involvement in this case. So she worked out of her home in Bridgeport, Connecticut. The community sort of knew the type of work that she did, and that presented some danger to her. So she was in the middle of moving. In fact, she was staying in a residential hotel with the family, and that's sort of where we met to prepare for sentencing. I say that because things were in flux. Things are still in flux for her. I also want to point out we filed an Exhibit A here. Exhibit A is a medical record from her. That was under seal, right? That's correct. That's correct. And it indicates, one, the seriousness of what she's dealing with in terms of her not only physical health, asthma, some other issues, but also her behavioral health, conversion disorder, seizure disorder, and just also her physical, her back, her legs, because of a car accident. So actually, is she able to take care of the three young children, given those mental and physical disabilities? She does her best, Your Honor. So she's home. She's homebound with one of the children during the day. I know that she may get some type of ride to pick up her children from daycare. But yes, yes, she takes care of her children. I know that she will cook for the children. She'll care for the children, aid the children. I know that she also will try to get help from time to time. But she is very much in their lives and caring for them. Okay. Then we should hear. We've kept you past your time. Thank you. We'll hear from the government. Good afternoon, Your Honors. Brendan Keith for the government. The government respectfully submits that this Court should deny the defendant's emergency motion for release. The defendant fails to raise a substantial issue of law or fact. The refusal to grant a departure is not reviewable. There was no procedural error, and there was no substantive error. Before I get into it, I would like to address Judge Carney's question about whether she's able, whether the defendant is able to take care of the three children. If we look at sentencing transcript at page 23, she says during her statement at the sentencing hearing, Your Honor, I could read it, but neurologically and chemically, she says she is incapable to do my motherly role for taking care of the children. That's her statement. I'm reading page 23. She says they say I'm okay, but neurologically I have a chemical imbalance that defeats the purpose for me to work and be capable enough to do my motherly role for taking care of my kids. I find that a little bit difficult to understand. You're saying that she's saying that she finds it difficult or cannot take care of her kids? I think in her own words, her disabilities defeat the purpose of her to take care of the kids. In other words, she cannot take care of the children because of her neurological and chemical problems. Those are her words. This may be totally out of the blue, but what will happen to the children? That's a great question. It's the government's position that the decision not to grant the departure is unreviewable. That being said, there are a number of people in the record who can take care of the children. At the record before, the judge, the district court at the time, had the husband and father. He's there. That husband's about to be sentenced. His grandparents are back in Jamaica, so maybe the children would be transported to Jamaica to be with the grandparents. I'd like to address the husband being sentenced. He's going to be sentenced towards the end of March. If the defendant goes in now, she'll be halfway done with her sentence by the time the husband is sentenced. If he gets the same 60-day plus 30-day self-surrender date, she'll be done by the time he has to self-surrender. So there is a practical concern, and time is an issue. But if she does go in very soon, the husband will be there for the whole time, presumably the whole time, to take care. He's working. He has to work. He has to work. I understand those concerns. He does have to work, and he's a trucker, and that limits his ability to take care of the children. There is daycare, and there is the grandparents. That is, I understand, they've been removed or relocated. But the record before the district court at the time, there was four people. There was that home health aide that they were hiring. There was the husband and father, the grandparents, and the children are in daycare for a good part of the day. So she is not the sole caretaker. Unlike the cases in the Second Circuit where a substantial family circumstance has been found, she is not the sole caretaker, and she raises herself doubts of her ability to care for the children in any event. I take it that any relocation of the grandparents is something that is not in the record before us that occurred after the district court made its decision. That is correct, Your Honor. That's my understanding. So if the circumstances have changed, I suppose one could go back to the district court. I would say that the district court would have had to create an—oh, let me go to John. I'm just saying, you know, it's not something that we have before us in reviewing the decision that the district court made. If there are changed circumstances, the appropriate thing to do would be to go back to the district court and make a record of what's happened and appeal to the district court. On the other hand, as you say, it is not an unfamiliar circumstance when two parents are involved in an offense, particularly where the sentences are relatively short, or at least this one is relatively short, to sequence the sentences in exactly the way that you suggested in order to provide for the children. Exactly, Your Honor. And I want to say that the government is not unsympathetic to the defendant's situation, and neither was the district court. The district court, sentencing transcript at 34, seems to go out of his way. He says, I don't think I can get all the way to the sentence Mr. Hayes is recommending, although your comments today and his comments and general human sympathy would otherwise push me there. The court is showing that he has taken all this into consideration in reaching that decision. He goes on, sentencing transcript at 38, to tell the defendant, you're not going to serve the full six months unless you do something really wrong in prison. This is a relatively unusual thing to do. You can see in this that the district court is conflicted in this, in the balance of the 3553A factors, he felt constrained and needed to impose the sentence of imprisonment in this case, which I think the government submits is appropriate. Additionally, Stephenson herself faces removal. There are removal proceedings that have begun, which would further limit her ability to care for the children once that takes place. There is no automatic departure to address another question from the court from before. You have not argued that there's a flight risk here. Is that right? That's correct. We don't believe there's a flight risk here. Even though you say that after this sentence she would be removable from the United States anyway. That's correct. Ordinarily, if this was a bail, a pretrial bail hearing, we would make that argument. But at this point, we're not making that argument. Okay. Fair enough. There is no automatic departure upon a finding of extraordinary family circumstances. I understand I'm beyond my time. Why don't you just take a moment to wrap up? Yes, of course. So I'll just point out that the Robles case, one of two cases cited by the defendant in government's opinion, stands for the opposite case of finding of family circumstances, extraordinary family circumstances. It does not require no time. It's the opposite. If it would be a substantial departure, that court decided not to grant the family circumstances departure in that case. Thank you, Your Honors. Thank you both for your arguments. We'll reserve decision and we'll try to get to a decision shortly. The clerk will please adjourn the court. Court is adjourned. Thank you. Thank you.